[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARYJUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
The parties in this case have filed cross motions for summary judgment. The plaintiff runs a Taxi service and on November 21, CT Page 3930 1991 one of its vehicles had a collision with a vehicle driven by the defendant Cardow. Cardow claims that as a result of the accident she suffered damage and injury. At the time of the incident the plaintiff alleges its vehicle was covered by a policy of insurance issued by the defendant insurance company. The plaintiff alleges it put the company on notice of the Cardow claim and demanded that the defendant insurance company investigate the claim and resolve it. In February 1992 the defendant Cardow brought suit against the plaintiff and despite demand the defendant insurance company has refused to defend the plaintiff or indemnify it. As a result the plaintiff has been forced to defend the ongoing Cardow lawsuit with all the costs and exposures that entails.
Asserting there is an actual and bona fide substantial question and dispute between the parties and uncertainty as to their legal relationship the plaintiff has brought a declaratory judgment action seeking a determination as to (1) whether liability insurance coverage existed on the plaintiff's vehicle on the date of the accident and (2) whether the defendant insurance company is required to defend the Cardow lawsuit and indemnify the plaintiff for any verdict rendered against it in the Cardow lawsuit.
The plaintiff as noted has filed a motion for summary judgment against the defendant insurance company asking that the court hold the company has a duty to defend the Cardow suit and indemnify the plaintiff for any verdict rendered against the plaintiff in that suit.
The defendant insurance company opposes the plaintiff's motion and has filed its own motion claiming there is no question of material fact that the plaintiff's vehicle was not a "covered auto" within the meaning of the insurance policy it issued to the plaintiff. Because of that the defendant would have no duty to defend or indemnify the plaintiff as a result of the Cardow suit against the plaintiff.
The rules to apply in motions for summary judgments are well known. If there is no genuine issue of material fact the court should grant such a motion. If there is such an issue the court should not resolve it but must leave the resolution to the time of trial.
For the purposes of these motions there is no dispute between the parties that a policy of insurance existed between the parties CT Page 3931 on the date of the accident; it was obtained August 21, 1991 and the duration of the policy was one year. The question is whether the particular vehicle involved in the accident was covered by the insurance policy on the date of the accident, November 21, 1991.
The policy provided by the defendant was required to cover "all taxi registrations", see § 14-29 of the general statutes. But whether in fact this particular vehicle was covered for the purposes of the dispute between these parties depends on the wording of the policy. There is no dispute that the vehicle was not a "covered auto" on the date the policy went into effect but after that date autos were added and deleted from policy coverage. The policy explicitly provides a mechanism as to how vehicles can be added to policy coverage. The relevant language of this policy on this subject says:
 ". . . . an (auto) you acquire will be a covered `auto' for that coverage (i.e. the coverage provided for in the policy) only if:
 a. We already cover all `autos' that you own for that coverage or it replaces an `auto' you previously owned that had coverage; and
 b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage."
According to an affidavit submitted by the president of the plaintiff company this vehicle was added to the plaintiff's fleet of autos on October 24, 1991. The affidavit goes on to claim that when he routinely added and deleted vehicles from coverage under the subject policy he would notify R.C. Knox Company agent for the defendant company. The affidavit then goes on to state that he, acting as president of the plaintiff added this particular vehicle to the policy and notified R.C. Knox Co. of this addition on November 15, 1991 some five days before the accident.
In opposition to this affidavit the defendant company submitted an affidavit from an underwriting manager of the insurance company. He states that R.C. Knox Co. was not an insurance agent of the defendant insurance company "but rather was an insurance broker." This gentleman reviewed the underwriting file and that examination revealed that no request was made by R.C. CT Page 3932 Knox Co. to have the vehicle in question added to the policy.
The defendant company makes something of the fact that no evidence by way of affidavit has been presented by the plaintiff that R.C. Knox Co. actually received any lists from the plaintiff adding the subject vehicle to coverage. But Mr. Scalzi the plaintiff's president submitted two affidavits saying he sent the information to R.C. Knox Co., attached a list with "sent to R.C. Knox" on the bottom of the list and said he sent the material pursuant to conversations with employees of both R.C. Knox and the defendant company. That is enough to establish proof the lists were sent to Knox and at least a prima facie case that they were received by that company. If the latter company was in fact the defendant's agent, there would be coverage for this vehicle even if R.C. Knox Co. did not inform the defendant that the plaintiff notified it that this vehicle was being added to the policy. If R.C. Knox Co. was a broker then the fact that the plaintiff informed that company that it desired that this vehicle be added to the policy would not result in this vehicle being covered.
The terms "agent" and "broker" are words of art in the insurance industry and whether an entity is an agent or a "broker" can depend on various competing considerations. Appleman in Insurance Law Practice spends sixty-five pages discussing various considerations that may be taken into account in making the distinction, see Volume 16, § 8721-8731, pp. 314-379. In fact under certain circumstances brokers can be regarded as agents, see § 8731, pp. 369 et seq.
I suppose these cross motions for summary judgment can be denied simply because neither side has supplied sufficient, if any, underlying facts upon which this court can conclude R.C. Knox Co. was an "agent" or "broker" of the defendant company. To submit an affidavit with conclusory language on one side to the effect that A is an "agent" with no facts to support that proposition really will not do to establish the agency relationship. On the other hand to submit a counter affidavit saying A is really a "broker" also without any underlying facts to support that characterization will not establish the fact that A is a "broker". We have a standoff with no facts presented to allow the court to resolve the question.
A second affidavit was submitted by the plaintiff's president, however, that introduces a factual claim that should be addressed. In this affidavit dated November 17, 1995 Mr. Scalzi said once his CT Page 3933 policy with the defendant was obtained he "attempted to communicate directly with this insurance carrier and was advised by Melissa Millard, an employee of New Hampshire Insurance Company, that I must communicate with the carrier through the party which procured the insurance, R.C. Knox Co. This method of communication was also confirmed by Ann Evans of R.C. Knox Co." The affidavit then goes on to say there was no one who Scalzi was aware of at the defendant company with whom he could have communicated concerning adding and deleting vehicles and since he was told to communicate with the company through R.C. Knox Co. he did so — that is why, he sent his list of additions, including a list referring to the subject vehicle to R.C. Knox Co.
Under certain circumstances an insurance broker may become the insurer's agent and the doctrine of either apparent authority or estoppel can be applied, where appropriate, when the broker's authority to bind the insurer at issue, at issue, Reserve InsuranceCo. v. Duckett, 214 A.2d 754, 759 (Md, 1965), See cases cited at § 8731 of Appleman Insurance Law Practice Vol. 16. All the cases' cited do not involve the same factual scenario as presented here but they do indicate the doctrines of apparent authority and estoppel apply in the insurance industry to in part regulate the fairness of relations between insured and insurers.
A clear statement of why it is fair that this should be so is set forth in another Maryland case, Hobdey v. Wilkinson,94 A.2d 625, 629 (1953).
 "One who knowingly permits another to act for him (sic) as though authorized, inducing third persons to rely to their disadvantage on the seeming authority, is estopped from later asserting the lack of authority of his apparent agent."
It is true that the policy explicitly provides that if an insured wants to add a vehicle to Fleet coverage, one of the requirements is that:
 "You tell us within 30 days after you acquire it that you want us to cover it for that coverage" (emphasis added).
Despite this language under the circumstances of this insurance relationship it would of course not be fair for the CT Page 3934 company by word, deed, or past practice to indicate to the insured (1) that it need not report the addition of vehicles to the company directly but may inform the broker who will then communicate with the company and then (2) when protection under the policy is requested tell the insured there is no coverage because the information was not communicated directly to the insurance company. In these circumstances the courts have created doctrines of apparent authority and estoppel. Such a practice, if it occurred, might be a deceptive insurance practice and violate the strong public policy interest in requiring these taxi fleets to carry insurance as reflected in § 14-39 Connecticut General Statutes.
I have a problem with granting summary judgment for either side, here, however because of one requirement of the doctrine of apparent authority. As noted in the Restatement (Second) Agency § 8 Comment (c) apparent authority exists only to the extent that it is reasonable for a party like Scalzi to believe that the purported agent, R.C. Knox Co. was authorized to receive the information concerning added vehicles for the defendant company.
Here the Scalzi affidavit states an employee of the insurance company said he must communicate to the company through R.C. Knox Company. Did she specifically refer to additions or deletions of vehicles to or from coverage? Who was this lady — what position did she hold — was it reasonable for Scalzi in light of her position in that company to think that he could communicate additions or deletions to coverage to R.C. Knox Co. despite the explicit policy language? Similar questions could be asked about Ms. Evans from R.C. Knox Co. — what did she actually confirm and what was her authority and position? Would it have been reasonable to expect that Mr. Scalzi should have not only informed R.C. Knox Co. but also to have sent a registered letter to the company? He says he did not know whom to communicate with at the insurance company but whom did he send his claim to? At least upon the record presented I cannot determine the applicability of an apparent authority or estoppel position but there is certainly enough of an issue raised to make it inappropriate to grant the defendant insurance company's cross-motion for summary judgment.
The plaintiff's motion for summary judgment and the defendant insurance company's cross-motion for summary judgment are denied.[1]
Thomas Corradino, Judge